

RECEIVED

AUG - 5 2008

CORPORATE LAW

### STATE OF TENNESSEE
### DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

July 30, 2008

Universal Underwriters Ins Company
7045 College Blvd
Overland Park, KS 66211
NAIC # 41181

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2760 0002 9676 8358
Cashier # 4386

Re: Lewis Ford, Inc.  V.  Universal Underwriters Ins Company

    Docket # CH-08-1337-2

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make cath that the attached Complaint For Declaratory Judgment was served on me on July 28, 2008 by Lewis Ford, Inc. pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Chancery Court of Shelby County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Shelby County
    140 Adams Street, Rm 308
    Memphis, Tn 38103



EXHIBIT

A

Service of Process 615.532.5260

| STATE OF TENNESSEE<br>30th JUDICIAL DISTRICT<br>CHANCERY COURT AT<br>MEMPHIS | **SUMMONS** | DOCKET NUMBER<br>CH- 08-1337-2 |
|---|---|---|
| Plaintiff<br><br>LEWIS FORD, INC. | | Defendant<br><br>UNIVERSAL UNDERWRITERS INSURANCE COMPANY |

| TO:  (NAME AND ADDRESS OF DEFENDANT) | | |
|---|---|---|
| | | Method of Service: |
| UNIVERSAL UNDERWRITERS INSURANCE COMPANY<br>7045 COLLEGE BLVD<br>OVERLAND PARK, KANSAS | | ☐ Certified Mail<br>☐ Shelby County Sheriff<br>☒ Comm. Of Insurance*<br>☐ Secretary of State*<br>☐ Out of County Sheriff*<br>☐ Private Process Server<br>☐ Other<br>   *Attach Required Fees |

You are summoned to defend a civil action filed against you in the Chancery Court of Shelby County, Tennessee. Your answer to this action must be made within thirty (30) days from the date this summons is served upon you. You must file your answer with the Clerk of the Court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action within thirty (30) days of service, judgment by default can be rendered against you for the relief sought in the complaint.

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br><br>EDWARD M. BEARMAN<br>780 RIDGE LAKE BLVD<br>SUITE 202<br>MEMPHIS, TN 38120<br>(901) 682-3450 | ISSUED 18th of July , 20 08<br><br>**DEWUN R. SETTLE**<br><br>Dewun R. Settle, Clerk and Master<br><br>By: B. Reynolds<br>Deputy Clerk & Master |
|---|---|

| TO THE SHERIFF: | Came to hand<br><br>_____ day of _____, 20 _____ |
|---|---|
| | Sheriff |

**Submit one original and one copy for each defendant to be served.

! Questions regarding this summons and the attached documents should be addressed to the Attorney listed above.

♿ For ADA assistance only, call (901) 379-7895

09/18/07

CK #24257 for $15.00 attached for service

IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

LEWIS FORD, INC.

    Plaintiff,

vs.

UNIVERSAL UNDERWRITERS INSURANCE
COMPANY,

    Defendant.

SHELBY COUNTY
CHANCERY COURT
JUL 1 8 2008
DEWUN R. SETTLE, C & M
TIME: _____ BY: _____

No: _CH-08-1337-2_

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

COMES NOW your Plaintiff, Lewis Ford, Inc., and files this Complaint for Declaratory
Judgment and Damages against the Defendant, Universal Underwriters Insurance Company, and
in support of its cause of action asserts the following:

1.        Lewis Ford, Inc. is a Tennessee corporation with its principal place of
business located at 5299 Summer Avenue, Memphis, Tennessee.

2.        Defendant Universal Underwriters Insurance Company ("Universal") is an
insurance company organized, incorporated and existing under the laws of
the state of Kansas. Universal maintains its principal place of business at
7045 College Boulevard, Overland Park, Kansas. Universal is authorized
to do business in the state of Tennessee and is in fact doing business in the
state of Tennessee.

3.        This court has jurisdiction over this action pursuant to Tennessee Code
Annotated, Section 16-11-102.

4.      Venue is proper in this county pursuant to Tennessee Code Annotated, Section 20-4-101.

5.      Lewis Ford, Inc. was sued in a class action lawsuit filed in the Chancery Court of Shelby County, Tennessee, styled *Robert Coupe, et al. v. Lewis Ford, Inc.*, cause number CH-05-0063. A copy of that Complaint is attached hereto as Exhibit A. That complaint was later amended to add Edward Ward and Sharleen Ward as a new plaintiffs. A copy of the Amended Complaint is attached hereto as Exhibit B.

6.      The complaint asserts several complaints by a class consisting of customers, which complaints arise out of the sale and/or lease of vehicles by Lewis Ford, Inc., which was at the time an authorized Ford Motor Company dealership.

7.      Based on the allegations of the Complaint, various claims were asserted against Lewis Ford, Inc., the source of which were complaints by customers of Lewis Ford, Inc. involved in the purchase and/or lease of motor vehicles.

8.      At the time this lawsuit was filed and at all subsequent times, Lewis Ford, Inc. was insured under a policy of insurance issued by Universal Underwriters Insurance Company. Pertinent portions of the policy are affixed to this Complaint as Exhibit C.

9.      The policy includes "garage coverage" identified as Part 500 of the policy, which requires Universal to indemnify Lewis Ford, Inc. and pay their defense costs for suits brought by customers arising from the sale or lease

of a vehicle. The policy states that the limits of coverage are controlled by the policy declarations.

10.     The policy in question identifies the specific perils insured against, including customer complaint defense, provides limits of $25,000.00 "per suit" and $500,000.00 "annual aggregate".

11.     In addition, the policy provides "umbrella uni-cover coverage Part 980" which also provides "customer complaint defense" with umbrella coverage of $6,000,000.00.

12.     Lewis Ford, Inc. made demand upon Universal Underwriters Insurance Company to pay the entire costs of the defense of the class action in question.

13.     At first, Universal Underwriters Insurance Company refused any coverage. Later, it agreed to and did pay $25,000.00 on the *Coupe* case and $25,000.00 on the *Ward* case. In doing so, Universal Underwriters Insurance Company acknowledged the existence of more than one suit and in fact, opened two claim files, claim number 9110001768 for the *Coupe* claim and claim number 9110001769 for the *Ward* claim.

14.     The class action in question would have involved in excess of 10,000 customers with customer complaints had each customer filed an individual suit against Lewis Ford, Inc.

15.     Because Universal Underwriters Insurance Company refused to pay for the defense of this cause in excess of $50,000.00, Lewis Ford, Inc. incurred approximately $250,000.00 in fees and costs to defend the cause.

3

16.     Lewis Ford, Inc. has made demand upon Universal Underwriters Insurance Company to reimburse Lewis Ford, Inc. for those fees and costs incurred in the defense of the lawsuit asserting customer complaints, but Universal Underwriters Insurance Company has refused to reimburse Lewis Ford, Inc.

17.     Universal is obligated under the policy in question to provide coverage up to the policy limits of $500,000.00 for customer complaint defense.

18.     Universal has breached its insurance contract with Lewis Ford, Inc. which requires Universal to indemnify Lewis Ford, Inc. for the defense costs incurred under customer complaint lawsuits such as the suit referred to above.

19.     The policy limits were set forth in the declaration page as $500,000.00 and Universal has failed and refused to pay defense costs in excess of $50,000.00.

20.     By failing to comply with the express terms of the policy, Universal has breached its insurance agreement with Lewis Ford, Inc.

21.     Lewis Ford, Inc. is therefore entitled to damages in the amount of all defense costs incurred in the underlying lawsuit, less the $50,000.00 previously paid by Universal to Lewis Ford, Inc.

22.     The policy declarations provide $500,000.00 in coverage limits for Lewis Ford, Inc. under the policy in question. Universal has ignored those policy limits in bad faith by only paying $50,000.00 in defense costs incurred as a result of the underlying lawsuit.

23.     Universal's action constitutes an unfair or deceptive practice in violation

        of the Tennessee Consumer Protection Act, Tennessee Code Annotated,

        Section 47-18-101 *et. seq.*

24.     Lewis Ford, Inc. is therefore entitled to damages pursuant to Tennessee

        Code Annotated, Section 47-18-109.

WHEREFORE, your Plaintiffs ask this court to award your Plaintiff actual damages for breach of contract in an amount not to exceed $500,000.00.

Your Plaintiff further requests that this court further award all relief available under Tennessee Code Annotated, Section 47-18-109, including, but not limited to its attorneys' fees and costs.

Respectfully submitted,

Edward Bearman. (#14242)

THE LAW OFFICE OF EDWARD M.
BEARMAN
780 Ridge Lake Blvd, suite 202
Memphis Tn 38120
901.682-3450 (Phone)
901.682-3590 (Fax)
ebearman@jglawfirm.com

ATTORNEY FOR PLAINTIFF
LEWIS FORD, INC.

5

# IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**ROBERT COUPE and ELAINE COUPE,**
on behalf of themselves and
all others similarly situated,

      **Plaintiffs,**

vs.

**LEWIS FORD, INC.,**

      **Defendant.**



Case No. 04 05 0063

**JURY DEMANDED**

---

### CLASS ACTION COMPLAINT       Fraud

---

TO THE CHANCELLORS OF SHELBY COUNTY, TENNESSEE,
GREETINGS:

     COME NOW Plaintiffs Robert Coupe and Elaine Coupe ("Plaintiffs"), on behalf of

themselves and all others similarly situated, and pursuant to Rule 23 of the Tennessee Rules of Civil

Procedure, file this Class Action Complaint against Defendant Lewis Ford, Inc. ("Defendant"). This

Complaint is alleged upon information and belief, except to those allegations which pertain to the

named Plaintiffs, which are alleged upon their personal knowledge.

### I. PARTIES, JURISDICTION AND VENUE

     1.    Plaintiffs reside at 1300 Clay Pond Drive, Oakland, Tennessee, 38060, in Shelby

County Tennessee.

     2.    Defendant is a Tennessee corporation that maintains a principal office and place of

business at 5299 Summer Avenue, Memphis, Tennessee, 38122. Defendant's registered agent is

- 1 -



Lawrence Lewis ("Lewis") at the same address.

3.       Jurisdiction and venue are both proper before this Court pursuant to TENN. CODE ANN. §20-4-101 *et seq.* Defendant maintains its principal office and business in Shelby County, Tennessee, and all deceptive acts and practices alleged herein occurred in Shelby County.

4.       Upon information and belief, Defendant required every customer purchasing or leasing a vehicle from Defendant to sign an arbitration agreement without negotiation. These arbitration agreements do not apply to this case because the gist of this Complaint pertains to violations of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-101, *et seq.*, and these arbitration agreements explicitly exempt allegations of statutory violations from their purview. The arbitration agreements also provide expressly that they apply to disputes arising under the "Retail Buyers Order," and therefore do not apply to any other agreements between Defendant and members of either proposed Class. Moreover, these arbitrations agreements are unenforceable under Tennessee law because they are contracts of adhesion, and they are not supported by any consideration.

## II. FACTS

### A. FIRST PROPOSED CLASS - "ADMINISTRATIVE SERVICE FEE"

5.       On June 26, 2001, Plaintiffs purchased from Defendant a 2002 Ford Explorer.

6.       Pre-printed on Plaintiffs' "Retail Buyers Order" was an "Administrative Service Fee" for $199.85, which Defendant charged to Plaintiffs and Plaintiffs paid to Defendant. In another section of the "Retail Buyers Order," Defendant defined the "Administrative Service Fee" as follows

> This fee includes free towing of your vehicle from anywhere in Shelby, Fayette, Tipton or DeSoto County to Lewis Ford, Inc.

- 2 -

provided repairs are made in Lewis Ford's shop. This fee also includes complete cosmetic detailing materials, notary services as needed, courier services and fuel. This charge covers costs and/or profit to the seller/dealer for items such as inspecting, cleaning, and adjusting new and used vehicles and preparing documents related to the sale. This fee does not represent any payment for services which have been reimbursed to the dealer by the manufacturer.

7.     Upon information and belief, the $199.85 charged by Defendant and paid by Plaintiffs for this "Administrative Service Fee" did not result from any costs of document preparation or any other expenses incurred by Defendant for the 2002 Ford Explorer purchased by Plaintiffs. Rather, the Administrative Service Fee was pure profit for Defendant.

8.     Upon information and belief, Defendant never intended to provide any towing services for Plaintiffs as indicated in the definition of "Administrative Service Fee."

9.     When Plaintiffs questioned the "Administrative Service Fee," Defendant and its agents told Plaintiffs that they had no choice but to pay the extra fee.

10.    On December 29, 2001, Plaintiffs purchased from Defendant a 2002 Ford F-150.

11.    As before, pre-printed on Plaintiffs' "Retail Buyers Order" was an "Administrative Service Fee" for $299.50, which Defendant charged to Plaintiffs and Plaintiffs paid to Defendant. When Plaintiffs questioned this extra fee, Defendant and its agents told Plaintiffs that they had no choice but to pay the extra $299.50.

12.    As before, this "Administrative Service Fee" bore no actual relation to any costs incurred by the dealership for the 2002 Ford F-150 purchased by Plaintiffs.

13.    As before, Defendant did not intend to provide Plaintiffs any future towing services for the 2002 Ford F-150, despite the express language of the "Retail Buyer Order."

- 3 -

14.     On May 7, 2003, Plaintiffs purchased from Defendant a 2003 Ford Excursion.

15.     As before, pre-printed on Plaintiffs' "Retail Buyers Order" was an "Administrative Service Fee" for $299.50, which Defendant charged to Plaintiffs and Plaintiffs paid to Defendant. When Plaintiffs questioned this extra fee, Defendant and its agents told Plaintiffs that they had no choice but to pay the extra $299.50.

16.     As before, this "Administrative Service Fee" bore no actual relation to any costs incurred by the dealership for the 2003 Ford Excursion purchased by Plaintiffs.

17.     As before, Defendant did not intend to provide Plaintiffs any future towing services for the 2003 Ford Excursion, despite the express language of the "Retail Buyer Order."

18.     Upon information and belief, Defendant charged its "Administrative Service Fee" to every consumer that purchased or leased an automobile from Defendant.  Moreover, any member of the First Proposed Class that had his vehicle towed to Defendant for repairs was charged a separate towing fee included in the final bill for those repairs.  During any transaction to date wherein Defendant charged its "Administrative Service Fee" to a member of the First Proposed Class, Defendant never intended to provide any towing services in the future as explicitly promised in the "Retail Buyer Order."

19.     Upon information and belief, Defendant, through sales training, sales policies and other procedures, instructed salesmen to inform customers that the "Administrative Service Fee" was actually a real cost (which it is not) relating to the specific automobile at issue and that the costs and fees are non-negotiable.

20.     Upon information and belief, Defendant had contractual arrangements with various

-4-

towing services in Shelby County and adjacent counties that provided fixed, low prices for Defendant to pay when these towing services tow a vehicle to Defendant for repairs.

21.     Upon information and belief, Defendant paid a small sum of money to each towing service every time the towing service towed a car to Defendant for repairs.  Defendant then charged each member of the First Proposed Class an exaggerated sum of money for the towing service, despite that individual's payment of the original "Administrative Service Fee" under the "Retail Buyer's Order."

22.     Defendant included the description of the "Administrative Service Fee" recited hereinabove in an attempt to deliberately mislead all members of the First Proposed Class into believing that they were paying a fee for a service of value.

23.     Defendant intentionally induced each member of the First Proposed Class to rely upon this misrepresentation of fact, and that reliance was justifiable under the circumstances.

24.     Upon information and belief, in the rare case wherein a member of the First Proposed Class questioned the "Administrative Service Fee," Defendant had trained most or all of its employees to reassure that customer that the money was well-spent and completely necessary. Additionally, Defendant and its employees flatly refused to sale or lease automobiles to customers who objected to payment of the "Administrative Service Fee."

25.     Defendant charged each class member the same amount of money for the "Administrative Service Fee," regardless of the automobile purchased or leased by the class member. In other words, regardless of whether a class member purchased or leased a Ford Expedition or Ford Escort, Defendant supposedly incurred the same amount of expenses from towing, cosmetic

- 5 -

detailing, fuel, inspecting and detailing.

26.     Plaintiffs and the First Proposed Class did not know that they had been defrauded into paying the unnecessary "Administrative Service Fee" until the filing of this case.

27.     By misleading its customers into paying the "Administrative Service Fee," Defendant represented to Plaintiffs and members of the First Proposed Class that services had characteristics, uses and/or benefits that they really did not have, by representing that payment of the "Administrative Service Fee" entitled class members to pre-paid future towing services.

28.     By misleading its customers into paying the "Administrative Service Fee," Defendant has represented that the transactions between itself and members of the First Proposed Class conferred or involved rights, remedies or obligations that they did not have or involve, by representing that payment of the "Administrative Service Fee" entitled class members to pre-paid future towing services.

29.     By misleading its customers into paying the "Administrative Service Fee," Defendant has failed to disclose to members of the First Proposed Class that the fee was based on a predetermined rate or charge, instead of the value of the services actually performed, which were worthless in actuality.

## II. FACTS

### B. SECOND PROPOSED CLASS - "SCOOPED" REBATES

30.     As previously alleged, Plaintiffs purchased from Defendant a 2003 Ford Excursion on May 7, 2003.

31.     When Plaintiffs purchased the 2003 Ford Excursion, Ford Motor Company ("FMC

was offering customers a cash rebate.

32.     Plaintiffs qualified for a $2,000.00 cash rebate on their purchase of the 2003 Ford Excursion

33.     Defendant and its agents knew of this cash rebate being offered by FMC but failed to disclose the existence of the rebate to Plaintiffs.

34.     Instead, Defendant reported to FMC that it had given Plaintiffs the $2,000.00 cash rebate against the purchase price of the 2003 Ford Excursion, then subsequently received $2,000.00 cash from FMC in fraudulent reimbursement and kept the money for itself.

35.     As previously alleged, Plaintiffs purchased from Defendant a 2002 Ford Explorer on June 26, 2001.

36.     Plaintiffs qualified for a $1,000.00 cash rebate on the purchase of the 2002 Ford Explorer, but Defendant and its agents knew of the cash rebate being offered by FMC but failed to disclose the existence of the rebate to Plaintiffs.

37.     Instead, Defendant reported to FMC that it had given Plaintiffs the $1,000.00 cash rebate against the purchase price of the 2002 Ford Explorer, received $1,000.00 cash from FMC in fraudulent reimbursement and then kept the rebate for itself.

38.     Defendant calls this practice "scooping" the rebate, and the name "scooping" has been used to describe this practice throughout the automotive industry for a long period of time. "Scooping," sometimes called "swallowing," refers generally to the practice of an automobile dealership's failure to disclose an available consumer rebate, failure to include the rebate in the retail or lease agreement as a reduction to the purchase price or the amount financed, and subsequent

absorption of the rebate from the manufacturer as pure dealership profit.

39.    Upon information and belief, Defendant through sales training, sales policies and other procedures, instructed its employees and agents to "scoop" rebates based upon certain criteria applicable to Defendant's customers.

40.    On some occasions, when customers did not inquire as to the availability of a cash rebate, Defendant intentionally refrained from informing the customers of the existence of the cash rebate.

41.    On other occasions, customers asked for a cash rebate and Defendant told the customers that no cash rebates were available on the particular automobile in question, despite the actual availability of such a rebate.

42.    On other occasions, customers asked for a cash rebate and Defendant intentionally misrepresented the amount of the available rebate, giving a portion of the rebate to the customers and keeping the rest for Defendant.

43.    Upon information and belief, Defendant "scooped" numerous rebates each month. These customers, victims of rebate "scooping," constitute the Second Proposed Class.

44.    Upon information and belief, Defendant first targeted customers with poor English-speaking skills. However, no customers were immune, as demonstrated by the scooping of Plaintiff's rebate alleged hereinabove.

45.    Upon information and belief, Defendant fraudulently induced class members to sign a blank form, labeled the "Customer Cash Payment Authorization," under false pretenses. The "Customer Cash Payment Authorization" form contained language authorizing FMC to pay a

- 8 -

available "Customer Cash Incentives" to Defendant instead of the signing class member, although Defendant would either conceal the operative language or misrepresent the purpose of that language to Plaintiff. After obtaining the class member's signature, but out of that class member's presence, Defendant and its agents would fill in the remaining blanks, including the dollar amount of the rebate that Defendant was going to fraudulently receive from FMC.

46.     Upon information and belief, Defendant often paid for advertising spots on television, radio and printed media that include factory incentive cash rebate offers on various automobiles offered for sale, without the intent to sell the automobiles with cash rebates as advertised.

47.     Defendant repeatedly made false or misleading statements of fact concerning the existence of price reductions available for its customers.

48.     Defendant repeatedly failed to disclose the existence of available cash rebates to its customers, despite the obvious materiality of the rebate to the contractual relationship between the parties.

49.     FMC offered various cash rebates to potential customers as intended third-party beneficiaries of an agreement between FMC and Defendant.

### III. CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action on behalf on themselves and all other similarly situated consumers, pursuant to Rule 23 of the Tennessee Rules of Civil Procedure, as the representative of the following Proposed Classes:

> **FIRST PROPOSED CLASS**
> All individuals who purchased or leased motor vehicles from Defendant Lewis Ford, Inc. and with respect to which paid an "Administrative Service Fee" or similarly designated dealer profit

disguised as legitimate costs, fees and/or charges since Defendant Lewis Ford, Inc. began adding these costs, fee and/or charges onto the price of the motor vehicles.

Excluded from the Class are Defendant Lewis Ford, Inc.'s employees, representatives, agents and said persons' heirs and/or assigns.

## SECOND PROPOSED CLASS

All individuals who purchased or leased motor vehicles from Defendant Lewis Ford, Inc. and with respect to which a cash rebate or other similar incentive was available to the individual, but the existence, availability and/or actual amount of which was concealed or misrepresented by Defendant Lewis-Ford, Inc., since Defendant Lewis Ford, Inc. began the practice of concealing, misrepresenting or "scooping" available cash rebates or other similar incentives.

Excluded from the Class are Defendant Lewis Ford, Inc.'s employees, representatives, agents and said persons' heirs and/or assigns.

51.     The requirements of Rule 23.01, 23.02(1), 23.02(2) and 23.02(3) of the Tennessee

Rules of Civil Procedure have been met in that:

(a)     Plaintiffs do not know the exact size of the First Class or the Second Class because such information is in the exclusive control of Defendant. The exact number of members in both Classes may be determined by appropriate discovery. Based on the nature of the commerce involved, however, Plaintiffs believe that the members of both Classes number in the thousands and that members of both Classes are so numerous and so geographically dispersed that joinder of all members in either Class would prove impracticable;

(b)     Plaintiffs' claims are typical of other claims of members' of the First Class because each consumer in the First Class has been injured through the uniform misrepresentations, fraud and omissions described herein and has been assessed and/or paid monies to Defendant without having been informed that they were paying additional dealer profit, rather than actually paying the "Administrative Service Fee" in exchange for a service of value. Accordingly, by proving their own claims, Plaintiffs will presumptively prove the claims of all members of the First Class;

- 10 -

(c)    Plaintiffs' claims are typical of other claims of members' of the Second Class because each consumer in the Second Class has been injured through the uniform misrepresentations, fraud and omissions described herein and has paid monies to Defendant without having been informed that a cash rebate or other similar incentive was available to them, while Defendant actually kept the cash rebate or other similar incentive for itself. Accordingly, by proving their own claims, Plaintiffs will presumptively prove the claims of all members of the Second Class;

(d)    Plaintiffs can and will fairly and adequately represent and protect the interests of both Classes and they have no interest that conflicts with or is antagonistic to the interests of either Class. Plaintiffs have retained attorneys who are experienced and competent in class action, civil litigation, commercial and consumer litigation and law. No conflict exists between Plaintiffs and members of either Class because:

(i)    the claims of the named Plaintiffs are typical of the claims of the absent members of both Classes;

(ii)    all of the questions of law and fact regarding the liability of Defendant are common to both Classes and overwhelmingly predominate over any individual issues, such that, by prevailing on their own claims, Plaintiffs will necessarily establish Defendant's liability to all members of both Classes;

(iii)    without the representation provided by Plaintiffs, virtually no members of either Class would received legal redress or representation for their injuries;

(iv)    Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action and Plaintiffs and said counsel are aware of their fiduciary responsibilities to members of both Classes and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for both Classes.

(e)    Virtually all of the issues of law and fact in this class action are common to each member of both Classes and include at least the following:

- 11 -

(i)      Whether Defendant engaged in both or either pattern of conduct alleged hereinabove;

(ii)     Whether there is a statutory or other legal authority for either of Defendant's patterns of conduct alleged hereinabove;

(iii)    Whether Defendant's actions alleged hereinabove are in violation of the Tennessee Consumer Protection Act and/or other Tennessee law;

(iv)    Whether Plaintiffs and the members of either Proposed Class have sustained damages and the proper measure of any such damages;

(v)     Whether it is appropriate for the Court to enjoin further conduct by Defendant in either pattern described hereinabove; and

(vii)    Whether damages should be trebled in accordance with the provisions of applicable Tennessee law.

52.     Class certification is appropriate under Rule 23.02(3) of the Tennessee Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted herein given that:

(a)    Commons questions of law and fact overwhelmingly predominate over any individual questions that may arise and, consequently, there would be enormous economies to the courts and to the parties in litigating the common issues on a class-wide basis instead of on a repetitive individual basis;

(b)    The size of each Class member's individual damage claim is too small to make individual litigation an economically viable alternative, such that few Class members have any interest in individually controlling the prosecution of separate actions;

(c)    Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members;

(d)     Despite the relatively small size of each individual Class member's claim, the aggregate volume of said claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation; and

(e)     No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law or fact to be litigated at the liability phase are common to both Classes.

53.     Class certification is appropriate for both Classes under Rule 23.02(2) of the Tennessee Rules of Civil Procedure because Defendant has acted on grounds generally applicable to members of both Classes.

54.     Class certification is appropriate pursuant to Rule 23.02(1) of the Tennessee Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of both Classes, which may, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or which may substantially impair or impede their ability to protect their interests.

55.     Division of all class members into two subclasses, and subsequent treatment as two separate classes of their own, is appropriate under Rule 23.03(4)(b) of the Tennessee Rules of Civil Procedure, as outlined more thoroughly hereinabove.  Additionally, all members of the Second Class herein are and will necessarily be members of the First Class herein, but not vice versa.  Hence, the Second Class is a sub-class of the First Class.

56.     Plaintiffs seek injunctive relief in the form of an order requiring Defendant Lewis Ford, Inc. to discontinue charging its "Administrative Service Fee" and to discontinue its practice of "cooping" rebates.

- 13 -

# IV. CLAIMS FOR RELIEF

## A. FIRST CLASS - FIRST CAUSE OF ACTION

### *Multiple Violations of the Tennessee Consumer Protection Act*

57.     Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-56 hereinabove.

58.     Defendant is in the business of selling automobiles and engages in trade, commerce and consumer transactions as those terms are defined in the Tennessee Consumer Protection Act at TENN. CODE. ANN. § 47-18-103.

59.     Plaintiffs are "consumers," as that term is defined at TENN. CODE. ANN. § 47-18-103.

60.     Defendant's practice of imposing an "Administrative Service Fee" upon Plaintiffs and the First Class is unfair and deceptive, as those terms are defined by Tennessee law, because the fee actually represents a pure profit for Defendant, without disclosure of such to Defendant's customers.

61.     Defendant's practice of imposing an "Administrative Service Fee" upon Plaintiffs and the First Class is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant, by clearly defining the purpose of the fee, represents to each customer that the transaction at hand confers rights and obligations that it does not really confer, i.e. that each customer is pre-paying for towing service to Defendant's dealership, and that other dealership costs are covered by this fee.

62.     Defendant's practice of imposing an "Administrative Service Fee" upon Plaintiffs and the First Class is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant represents that the fee covers the cost of services, i.e. towing, that the fee really does

- 14 -

cover.

63.     Defendant's practice of imposing an "Administrative Service Fee" upon Plaintiffs and the First Class is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant failed to disclose to its customers that the fee was based upon a predetermined rate, instead of the value of the services actually performed, which were worthless and never provided in reality.

64.     Defendant's practice of imposing an "Administrative Service Fee" upon Plaintiffs and the First Class is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant failed to disclose the existence of the fee to customers during negotiations over the price of the vehicle in question, and thereby excluded this predetermined cost from the advertised price of their vehicles.

65.     Upon information and belief, the imposition of the "Administrative Service Fee" is routine and Defendant, its employees and agents generally include the fee and/or other similar charges into each consumer transaction involving the sale of an automobile, thereby increasing Defendant's profit on each transaction.

66.     Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's inclusion of the "Administrative Service Fee" in Plaintiff's Retail Buyer's Order, and the manner in which Defendant assessed the fee against Plaintiffs, is a violation of the Tennessee Consumer Protection Act.

67.     Plaintiffs and the First Class have lost an ascertainable amount of money because Defendant's actions.

- 15 -

## B. FIRST CLASS - SECOND CAUSE OF ACTION

### *Fraudulent Misrepresenation*

68.     Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-67 hereinabove.

69.     As previously alleged, Defendant charged Plaintiffs and the First Class an "Administrative Service Fee" that was non-negotiable and based upon a pre-determined rate.

70.     As alleged above in Paragraph 6, Defendant explicitly defined the purpose of its "Administrative Service Fee" within the express language of the form "Retail Buyer's Order."

71.     Amongst other things, Defendant claimed in the express language of the "Retail Buyer's Order" that the "Administrative Service Fee" was paid by Plaintiffs and the First Class to cover the costs of towing specific vehicles to Defendant's service department, as well as the costs of cosmetic detailing, notary services, courier services, document preparation, cleaning and inspecting.

72.     Upon information and belief, Defendant intentionally misrepresented to Plaintiffs and the First Class the true purpose of the "Administrative Service Fee," which was not to cover any of the costs listed by Defendant in its "Retail Buyer's Order," but rather to add pure profit for Defendant to the sale of every single automobile from the dealership to members of the First Class.

73.     Some members of the First Class orally questioned the purpose and existence of the "Administrative Service Fee" during their transactions with Defendant, only to have their requests answered with further misrepresentations about the necessity of the fee.

74.     Plaintiffs and all members of the First Class were induced to pay the "Administrative Service Fee" by Defendant's misrepresentations pertaining to the purposes of and necessity for the

- 16 -

fee.

75.    Plaintiffs and all members of the First Class reasonably relied upon Defendant's misrepresentations and consequently suffered monetary losses by paying the "Administrative Service Fee" to Defendant after being fraudulently induced to do so.

76.    Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's imposition of and definition of its "Administrative Service Fee" constitutes a fraudulent misrepresentation under Tennessee law.

## C. FIRST CLASS - THIRD CAUSE OF ACTION

### *Promissory Fraud*

77.    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-76 hereinabove.

78.    As previously alleged, Defendant charged Plaintiffs and the First Class an "Administrative Service Fee" that was non-negotiable and based upon a pre-determined rate.

79.    As alleged above in Paragraph 6, Defendant explicitly defined the purpose of its "Administrative Service Fee" within the express language of the form "Retail Buyer's Order."

80.    Defendant claimed in the express language of the "Retail Buyer's Order" that the "Administrative Service Fee" was paid by Plaintiffs and the First Class to, *inter alia*, cover the costs of towing specific vehicles to Defendant's service department.

81.    Upon information and belief, Defendant never intended to use the funds collected from the "Administrative Service Fee" to pay the costs of towing vehicles purchased or leased by Plaintiffs or the members of the First Class.

- 17 -

82.    Upon information and belief, Defendant intentionally misrepresented to Plaintiffs and the First Class the true purpose of the "Administrative Service Fee," which was not to cover the cost of towing vehicles purchased or leased by members of the First Class, but rather to add pure profit for Defendant to the sale of every single automobile from the dealership to members of the First Class.

83.    Plaintiffs and all members of the First Class were induced to pay the "Administrative Service Fee" by Defendant's fraudulent promise to use the money to pay for the cost of towing each Class member's vehicle to Defendant's service department when necessary.

84.    Plaintiffs and all members of the First Class reasonably relied upon Defendant's fraudulent promise and consequently suffered monetary losses by paying the "Administrative Service Fee" to Defendant after being fraudulently induced to do so.

85.    Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's misrepresentation of its intent to pay the cost of towing Plaintiffs' vehicles with funds garnered from Defendant's "Administrative Service Fee" constitutes promissory fraud under Tennessee law.

## D. FIRST CLASS - FOURTH CAUSE OF ACTION

### *Unjust Enrichment*

86.    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-85 hereinabove.

87.    Defendant, through its practice of collecting an "Administrative Service Fee" from members of the First Class, has been unjustly enriched in a manner that requires imposition of

- 18 -

constructive trust upon Defendant in favor of Plaintiffs and members of the First Class.

88.     Defendant should not be allowed to retain the economic benefit derived from its improper, unfair and deceptive conduct and should be forced to disgorge all funds gained from charging its "Administrative Service Fee" by paying restitution and pre-judgment interest to Plaintiffs and the First Class.

89.     Defendant's unlawful behavior will continue unless the Court grants the relief sought by Plaintiffs and the First Class.

## V. CLAIMS FOR RELIEF

## A. SECOND CLASS - FIRST CAUSE OF ACTION

### *Multiple Violations of the Tennessee Consumer Protection Act*

90.     Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-89 hereinabove.

91.     Defendant is in the business of selling automobiles and engages in trade, commerce and consumer transactions as those terms are defined in the Tennessee Consumer Protection Act at TENN. CODE. ANN. § 47-18-103.

92.     Plaintiffs are "consumers," as that term is defined at TENN. CODE. ANN. § 47-18-103.

93.     Defendant's practice of "scooping" rebates is unfair and deceptive, as those terms are defined by Tennessee law, because the rebates and other similar cash incentives were originally intended by FMC to inure to the benefit of Plaintiffs and all others members of the Second Class.

94.     Defendant's practice of "scooping" rebates is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant advertised its automobiles, and the cash rebates

applicable thereto, without the intent to sell the vehicles as advertised.

95.    Defendant's practice of "scooping" rebates is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant has repeatedly made false or misleading statements of fact concerning the existence of price reductions available to Plaintiffs and all other members of the Second Class.

96.    Defendant's practice of "scooping" rebates is unfair and deceptive, as those terms are defined by Tennessee law, because Defendant owes Plaintiffs and members of the Second Class a duty to disclose relevant information that affects the pricing of the each automobile in question.

97.    Defendant's practice of "scooping" rebates in unfair and deceptive, as those terms are defined by Tennessee law, because Defendant fraudulently induces Plaintiffs and class members to sign its "Customer Cash Payment Authorization" form by lying about the form's purpose, while key pricing information is left blank, then subsequently filled in by Defendant and its agents.

98.    Plaintiffs and members of the Second Class suffered ascertainable monetary damage as a result of Defendant's repeated unfair and deceptive practice of "scooping" rebates.

99.    Plaintiffs assert on behalf of themselves and all others similarly situated the Defendant's practice of "scooping" rebates violates the Tennessee Consumer Protection Act.

## B. SECOND CLASS - SECOND CAUSE OF ACTION

### *Fraudulent Misrepresentation*

100.    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1- hereinabove.

101.    As alleged above, Defendant intentionally "scooped" rebates and other available

- 20 -

incentives from FMC that were intended to inure to the benefit of Plaintiffs and members of the Second Class.

102.    As alleged above, Plaintiffs and many members of the Second Class inquired as to the availability of a rebate while negotiating the purchase or lease of an automobile from Defendant.

103.    As alleged above, on many occasions, Defendant affirmatively represented to Plaintiffs and members of the Second Class that no rebate or other similar cash incentive was available to the specific customer at that time, when, in reality, a rebate worth thousands of dollars was offered by FMC, and available to that specific customer relating to the purchase or lease of the vehicle in question.

104.    As alleged above, on many other occasions, Defendant intentionally misrepresented the amount of the rebate available to Plaintiffs or members of the Second Class. Unbeknownst to the class member, Defendant would then split the rebate and keep a large portion for itself.

105.    In every case described above, Defendant fraudulently reported to FMC that Defendant had give a rebate or other similar cash incentive to the class member, and subsequently received reimbursement from FMC, unbeknownst to the class member.

106.    At all pertinent times, Defendant misrepresented to members of the Second Class the existence of a rebate, the availability of a rebate, and/or the amount of a rebate pertaining to each specific automobile sold to members of the Second Class.

107.    Defendant misrepresented to Plaintiffs and class members the true purpose of the "Customer Cash Payment Authorization" form, thereby obtaining each class members' signature thereon, and fraudulently submitting the form to FMC thereafter.

- 21 -

108.    Plaintiffs and members of the Second Class reasonably relied upon Defendant's misrepresentations and thereby suffered damages by not receiving the rebates intended for them by FMC.

109.    Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's practice of "scooping" rebates involves and constitutes fraudulent misrepresentation under applicable Tennessee law.

### C. SECOND CLASS - THIRD CAUSE OF ACTION

### *Fraudulent Concealment/Fraudulent Nondisclosure*

110.    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-109 hereinabove.

111.    As alleged above, Defendant intentionally "scooped" rebates and other available cash incentives from FMC that were intended to inure to the benefit of Plaintiffs and members of the Second Class.

112.    On many occasions when rebates were "scooped" by Defendant, Plaintiffs and/or members of the Second Class were not aware of the availability of any rebate or similar cash incentive.

113.    On all occasions when Plaintiffs and members of the Second Class did not inquire as to the availability of a rebate or other similar cash incentive, Defendant failed to disclose the existence of and availability of a rebate, even in situations where rebates were available to members of the Second Class.

114.    Under Tennessee law, Defendant has a duty to disclose such information to its

- 22 -

customers, whether or not the customers inquire about a rebate, because the availability of a rebate directly affects the price of the vehicle in question and is therefore material to the essence of the contracts between Defendant and its customers.

115.    Defendant has breached the duty described above in Paragraph 112.

116.    As alleged above, in situations where Defendant did not disclose to class members the existence of an available rebate or other similar cash incentive, Defendant reported to FMC that it had in fact given the rebate to a class member, and subsequently received reimbursement from FMC.

117.    Plaintiffs and members of the Second Class reasonably relied upon Defendant's concealment and non-disclosure, and thereby suffered ascertainable monetary damages by not receiving rebates or other similar cash incentives intended by FMC to inure to their benefit.

118.    Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's practice of "scooping" rebates involves and constitutes fraudulent concealment and fraudulent nondisclosure under applicable Tennessee law.

## D. SECOND CLASS - FOURTH CAUSE OF ACTION

### *Breach of Contract - Intended Third Party Beneficiary*

119    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-118 hereinabove.

120.    As alleged above, Defendant intentionally "scooped" rebates and other available cash incentives from FMC that were intended to inure to the benefit of Plaintiffs and members of the Second Class.

121.    Upon information and belief, FMC offers rebates and other cash incentives to

potential customers to lure them into Ford dealerships, like Defendant, to purchase or lease automobiles from the dealerships, resulting in profit to both FMC and the dealerships.

122.   FMC maintains a strong contractual relationship with each Ford dealership, including Defendant, part of which contract involves passing cash incentives from FMC through Defendant to Defendant's customers, resulting in economic benefits to all parties involved.

123.   Plaintiffs and members of the Second Class are intended third-party beneficiaries of the contract between FMC and Defendant as it pertains to rebates and other cash incentives, and are thereby entitled to enforce the agreement under Tennessee law.

124.   Under the circumstances of this case, it is appropriate to recognize the right of the Second Class members to enforce performance of Defendant's agreement with FMC.

125.   Members of the Second Class have accepted all other pertinent terms of the contracts between themselves and Defendant, and between Defendant and FMC, by purchasing FMC's vehicles through Defendant's dealership.  However, under the unique circumstances of this case, Defendant has at least one contractual obligation that must be fulfilled, which is passing the rebate and other cash incentives it has received from FMC through to its customers, the members of the Second Class.

126.   Plaintiffs assert on behalf on themselves and all others similarly situated that Plaintiffs are intended third-party beneficiaries of a contractual agreement between Defendant and FMC, and that Plaintiffs are legally entitled to enforce their rights as intended third-party beneficiaries.

127.   Plaintiffs assert on behalf of themselves and all others similarly situated th

- 24 -

Defendant holds in a constructive trust all rebates and other cash incentives originally intended for class members by FMC.

## E. SECOND CLASS - FIFTH CAUSE OF ACTION

### *Fraudulent Inducement/Rescission of Contract*

128.    Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-127 hereinabove.

129.    Defendant intentionally misrepresented the purpose of its "Customer Cash Payment Authorization" to each member of the Second Class, while intentionally leaving some key provisions on the form blank.

130.    Defendant engaged in this pattern of intentional misrepresentation to induce each member of the Second Class to sign a blank form, which Defendant could subsequently complete by inserting a cash rebate in the amount of its choice, thereby enabling Defendant to obtain the cash rebate from FMC as if a class member had actually authorized it.

131.    Plaintiffs and members of the Second Class justifiably relied upon Defendant's willful misrepresentation when signing the blank form, and consequently suffered monetary damages by paying more than necessary for their new automobile.

132.    Plaintiffs assert on behalf of themselves and all others similarly situated that Defendant's pattern of fraudulent inducement requires that the Court rescind each and every "Customer Cash Payment Authorization" signed by members of the Second Class, and that Defendant immediately disgorge all monies it received from FMC upon the submission of these forms.

- 25 -

## F. SECOND CLASS - SIXTH CAUSE OF ACTION

### *Unjust Enrichment*

133.     Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-132 hereinabove.

134.     Defendant, through its practice of "scooping" rebates from members of the Second Class, has been unjustly enriched in a manner that requires imposition of a constructive trust upon Defendant in favor of Plaintiffs and members of the Second Class.

135.     Defendant should not be allowed to retain the economic benefit derived from its improper, unfair and deceptive conduct and should be forced to disgorge all funds gained from "scooping" rebates from the Second Class by paying restitution and pre-judgment interest to Plaintiffs and the Second Class.

136.     Defendant's unlawful behavior will continue unless the Court grants the relief sought by Plaintiffs and the Second Class.

## VI. FRAUDULENT CONCEALMENT, EQUITABLE TOLLING

## AND CONTINUING VIOLATIONS

137.     Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-13 hereinabove.

138.     Plaintiffs did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action

139.     Plaintiffs' inability to discover said claims was directly attributable to the fact that

- 26 -

Defendant actively concealed the practice of "scooping" rebates and the true purpose of its "Administrative Service Fee."

140.    Every time that Defendant failed to disclose to class members that the "Administrative Service Fee" was really pure profit for the dealership, Defendant knew or should have known that such nondisclosure was material to Plaintiffs' and First Class members' decision to accept the "Administrative Service Fee" and pay Defendant accordingly.

141.    Defendant concealed the true nature of its "Administrative Service Fee" by affirmatively leading Plaintiffs and members of the First Class to believe that the fee represented payment for actual services rendered (i.e., doc fees, notary fees, etc.) and also pre-payment for future services (towing).

142.    Every time that Defendant failed to disclose the existence and/or availability of a rebate or other cash incentive to Plaintiffs or members of the Second Class, Defendant knew or should have known that such nondisclosure was material to Plaintiffs' or Second Class members' decision to pay a higher than necessary price for each vehicle in question.

143.    Every time Defendant intentionally misrepresented to Plaintiffs or Second Class members that no rebate was available, or intentionally misrepresented the amount of such rebate, Defendant knew or should have known that such intentional misrepresentation was material to Plaintiffs' or Second Class members' decision to pay a higher than necessary price for each vehicle in question.

144.    Defendant actively concealed the existence of and/or availability of rebates for Plaintiffs and Second Class members by either failing to disclose the availability of the rebates, or

- 27 -

intentionally misrepresenting the availability of or the amount of such rebate.

145.   Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as revealed by the facts alleged herein.

146.   Plaintiffs and members of both classes hereby assert the tolling of any applicable statutes of limitation because of Defendant's affirmative acts of concealment, nondisclosure and intentional misrepresentation.

147.   Defendant continues to engage in the unlawful practices described hereinabove, taking advantage of more and more consumers on a daily basis.  Therefore, each new instance of unlawful conduct by Defendant, as alleged hereinabove, constitutes part of a continuing violation and operates to toll the applicable statutes of limitation in this matter.

148.   Defendant is estopped from relying on any statute of limitations defense because of its unfair and deceptive conduct.

## VII. PUNITIVE DAMAGES

149.   Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-148 hereinabove.

150.   Plaintiffs and both proposed classes seek an imposition of punitive damages against Defendant because Defendant's deceptive business practices have been, and continue to be, fraudulent, malicious, intentional and/or reckless.  For nothing more than additional pure profit, Defendant repeatedly lied to and deceived all consumers that walked through its door, as outlined more thoroughly hereinabove.

151.   In determining a sufficient amount of punitive damages under applicable Tennessee

law, the Court should consider:

a.  Defendant's net worth and financial condition;

b.  The egregiousness of Defendant's deceptive business practices;

c.  Defendant's awareness of the harm it caused to consumers, and Defendant's motivation for causing said harm to Plaintiffs and both proposed classes;

d.  The duration of Defendant's deceptive business practices, and whether Defendant has taken steps to conceal such conduct;

e.  Whether Defendant has profited from its deceptive business practices;

f.  Whether Defendant has taken remedial action or attempted to make amends for its misconduct; and

g.  Any other circumstances that properly bear on the situation.

152.  Punitive damages are absolutely required under the circumstances of this case to punish Defendant for its unlawful conduct, and to deter other similar businesses from similar behavior.

## VIII. INJUNCTIVE RELIEF

153.  Plaintiffs hereby restate and incorporate the allegations of Paragraphs 1-152 hereinabove.

154.  After a final adjudication of this matter, Plaintiffs move the Court to enter a permanent injunction prohibiting Defendant from engaging in the deceptive business practices alleged hereinabove, and any other injunctive relief the Court deems appropriate.

- 29 -

## IX. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray for the following:

A.      That the Court enter an order certifying this case as a class action, designating the Plaintiffs as class representatives and designating counsel as class counsel;

B.      That the Court find Defendant's conduct to be unlawful and in violation of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-101 *et seq*;

C.      That, pursuant to the Tennessee Consumer Protection Act, the Court award Plaintiffs and both Classes compensatory damages in an amount to be determined at trial and such other necessary, proper and general relief as provided for in said Act that the Court finds appropriate;

D.      That the Court, pursuant to the Tennessee Consumer Protection Act, treble the damages awarded to Plaintiffs and both Classes;

E.      That the Court find that Defendant's deceptive business practices constitute fraudulent misrepresentation, fraudulent concealment, fraudulent nondisclosure and/or promissory fraud under Tennessee law, resulting in compensatory damages for Plaintiffs and both Classes;

F.      That the Court find that Defendant's deceptive business practices unjustly enriched Defendant at the expense of Plaintiffs and both Classes;

G.      That the Court impose upon Defendant a constructive trust in favor of Plaintffs and both Classes for all funds by which Defendant has been unjustly enriched, and to produce an accounting of said funds;

H.      That the Court find that Plaintiffs and the Second Class were third-party beneficiaries

- 30 -

of a contractual agreement between Defendant and FMC, and that Plaintiffs and the Second Class have legal standing to enforce their rights as third-party beneficiaries;

I.      That the Court find that Defendant fraudulently induced Plaintiffs and the Second Class to sign a blank "Customer Cash Payment Authorization" form as part of Defendant's fraudulent scheme to "scoop" rebates, thereby entitling Plaintiffs and the Second Class to rescission of all such agreements;

J.      That the Court award Plaintiffs and both Classes compensatory damages for all common law causes of action in an amount to be determined at trial;

K.      That the Court award Plaintiffs and both Classes punitive damages as a result of Defendant's wanton, willful, intentional and/or recklessly deceptive business practices;

L.      That the Court enter a permanent injunction prohibiting Defendant from "scooping" rebates and charging its "Administrative Service Fee," and prohibiting Defendant from any other actions the Court deems necessary;

M.      That the Court award Plaintiffs and both Classes their reasonable attorney's fees, disbursements and costs of this action, including expert fees and accounting fees; and

N.      That the Court award Plaintiffs and both Classes any other relief deemed necessary and proper by the Court, including but not limited to pre-judgment and post-judgment interest.

Respectfully submitted,

PIETRANGELO COOK PLC

BILL M. WADE #21056
ANTHONY C. PIETRANGELO #15596
JOHN J. COOK  #17725
International Place, Tower II
6410 Poplar Avenue, Suite 190
Memphis, Tennessee 38119
(901) 685-2662

*Attorneys for Plaintiffs Robert
Coupe and Elaine Coupe*

- 32 -

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ROBERT COUPE, ELAINE COUPE,
EDWARD WARD and SHARLEEN WARD,
on behalf of themselves and
all others similarly situated,

       Plaintiffs,

vs.

                                    Case No. CH-05-0063-2
                                        JURY DEMANDED

LEWIS FORD, INC.,

       Defendant.

*(Court filing stamp: FILED — SHELBY COUNTY CHANCERY COURT — JUL 15 2005 — KENNY W. ARMSTRONG, C & M — TIME:____)*

---

### FIRST AMENDED CLASS ACTION COMPLAINT

---

TO THE CHANCELLORS OF SHELBY COUNTY, TENNESSEE,
GREETINGS:

       COME NOW Plaintiffs Robert Coupe and Elaine Coupe ("the Coupes") and Edward Ward

and Sharleen Ward ("the Wards") (collectively "Plaintiffs"), on behalf of themselves and all others

similarly situated, and pursuant to Rule 23 of the Tennessee Rules of Civil Procedure, file this Class

Action Complaint against Defendant Lewis Ford, Inc. ("Defendant"). This Complaint is alleged

upon information and belief, except to those allegations which pertain to the named Plaintiffs, which

are alleged upon their personal knowledge.

### I. PARTIES, JURISDICTION AND VENUE

      1.     The Coupes reside at 1300 Clay Pond Drive, Oakland, Tennessee, 38060, in Fayette

County Tennessee. The Wards reside at 5151 Summer Mist Drive, Arlington, Tennessee, 38002 in

- 1 -



Shelby County Tennessee.

2.       Defendant is a Tennessee corporation that maintains a principal office and place of business at 5299 Summer Avenue, Memphis, Tennessee, 38122.  Defendant's registered agent is Lawrence Lewis ("Lewis") at the same address.

3.       Jurisdiction and venue are both proper before this Court pursuant to TENN. CODE ANN. §20-4-101 *et seq.*  Defendant maintains its principal office and business in Shelby County, Tennessee, and all deceptive acts and practices alleged herein occurred in Shelby County.

4.       Upon information and belief, Defendant required every customer purchasing or leasing a vehicle from Defendant to sign an arbitration agreement without negotiation.  These arbitration agreements do not apply to this case because the gist of this Complaint pertains to violations of the Tennessee Consumer Protection Act, TENN. CODE ANN. § 47-18-101, *et seq.*, and these arbitration agreements explicitly exempt allegations of statutory violations from their purview.  The arbitration agreements also provide expressly that they apply to disputes arising under the "Retail Buyers Order," and therefore do not apply to any other agreements between Defendant and members of either proposed Class.  Moreover, these arbitrations agreements are unenforceable under Tennessee law because they are contracts of adhesion, and they are not supported by any consideration.

## II. FACTS

### A. FIRST PROPOSED CLASS - "ADMINISTRATIVE SERVICE FEE"

5.       On June 26, 2001, the Coupes purchased from Defendant a 2002 Ford Explorer.

6.       Pre-printed on the Coupes' "Retail Buyers Order" was an "Administrative Service

Fee" for $199.85, which Defendant charged to the Coupes and the Coupes paid to Defendant.  In

another section of the "Retail Buyers Order," Defendant defined the "Administrative Service Fee" as

follows

> This fee includes free towing of your vehicle from anywhere in
> Shelby, Fayette, Tipton or DeSoto County to Lewis Ford, Inc.
> provided repairs are made in Lewis Ford's shop.  This fee also
> includes complete cosmetic detailing materials, notary services as
> needed, courier services and fuel.  This charge covers costs and/or
> profit to the seller/dealer for items such as inspecting, cleaning, and
> adjusting new and used vehicles and preparing documents related to
> the sale.  This fee does not represent any payment for services which
> have been reimbursed to the dealer by the manufacturer.

    7.    Upon information and belief, the $199.85 charged by Defendant and paid by the

Coupes for this "Administrative Service Fee" did not result from any costs of document preparation

or any other expenses incurred by Defendant for the 2002 Ford Explorer purchased by the Coupes.

Rather, the Administrative Service Fee was pure profit for Defendant.

    8.    Upon information and belief, Defendant never intended to provide any towing

services for the Coupes as indicated in the definition of "Administrative Service Fee."

    9.    When the Coupes questioned the "Administrative Service Fee," Defendant and its

agents told the Coupes that they had no choice but to pay the extra fee.

    10.    On July 21, 2004, the Wards purchased from Defendant a 2004 Ford Expedition.

    11.    Pre-printed on the Wards' "Retail Buyers Order" was an "Administrative Service Fee"

for $299.50, which Defendant charged to the Wards and the Wards paid to Defendant.

    12.    Defendant did not intend to provide the Wards any future towing services for the 2004

Ford Expedition, despite the express language of the "Retail Buyer Order."  Upon information and

belief, the $299.50 charged by Defendant and paid by the Wards for this "Administrative Service Fee" did not result from any costs of document preparation or any other expenses incurred by Defendant for the 2004 Ford Expedition purchased by the Wards. Rather, the Administrative Service Fee was pure profit for Defendant.

13.     In early 2005, while driving his 2004 Expedition toward his home in Arlington, Plaintiff Edward Ward experienced a blowout and had to have the Expedition towed to Defendant's service department.

14.     Upon his arrival, Defendant and its agents flatly refused to pay for the Wards' towing charges, despite the plain language of the "Administrative Service Fee" that was already paid by the Wards.

15.     Upon information and belief, Defendant charged its "Administrative Service Fee" to every consumer that purchased or leased an automobile from Defendant. Moreover, any member of the First Proposed Class that had his vehicle towed to Defendant for repairs was charged a separate towing fee included in the final bill for those repairs. During any transaction to date wherein Defendant charged its "Administrative Service Fee" to a member of the First Proposed Class, Defendant never intended to provide any towing services in the future as explicitly promised in the "Retail Buyer Order."

16.     Upon information and belief, Defendant, through sales training, sales policies and other procedures, instructed salesmen to inform customers that the "Administrative Service Fee" was actually a real cost (which it is not) relating to the specific automobile at issue and that the costs and fees are non-negotiable.

- 4 -

17.     Upon information and belief, Defendant had contractual arrangements with various towing services in Shelby County and adjacent counties that provided fixed, low prices for Defendant to pay when these towing services tow a vehicle to Defendant for repairs.

18.     Upon information and belief, Defendant paid a small sum of money to each towing service every time the towing service towed a car to Defendant for repairs. Defendant then charged each member of the First Proposed Class an exaggerated sum of money for the towing service, despite that individual's payment of the original "Administrative Service Fee" under the "Retail Buyer's Order." On other occasions, such as the one involving the Wards and described immediately above, Defendant simply refused to pay the towing company and told the customers that it was the customer's obligation to do so.

19.     Defendant included the description of the "Administrative Service Fee" recited hereinabove in an attempt to deliberately mislead all members of the First Proposed Class into believing that they were paying a fee for a service of value.

20.     Defendant intentionally induced each member of the First Proposed Class to rely upon this misrepresentation of fact, and that reliance was justifiable under the circumstances.

21.     Upon information and belief, in the rare case wherein a member of the First Proposed Class questioned the "Administrative Service Fee," Defendant had trained most or all of its employees to reassure that customer that the money was well-spent and completely necessary. Additionally, Defendant and its employees flatly refused to sale or lease automobiles to customers who objected to payment of the "Administrative Service Fee."

22.     Defendant charged each class member the same amount of money for the

- 5 -

"Administrative Service Fee," regardless of the automobile purchased or leased by the class member. In other words, regardless of whether a class member purchased or leased a Ford Expedition or a Ford Escort, Defendant supposedly incurred the same amount of expenses from towing, cosmetic detailing, fuel, inspecting and detailing.

23.     Plaintiffs and the First Proposed Class did not know that they had been defrauded into paying the unnecessary "Administrative Service Fee" until the filing of this case.

24.     By misleading its customers into paying the "Administrative Service Fee," Defendant represented to Plaintiffs and members of the First Proposed Class that services had characteristics, uses and/or benefits that they really did not have, by representing that payment of the "Administrative Service Fee" entitled class members to pre-paid future towing services.

25.     By misleading its customers into paying the "Administrative Service Fee," Defendant has represented that the transactions between itself and members of the First Proposed Class conferred or involved rights, remedies or obligations that they did not have or involve, by representing that payment of the "Administrative Service Fee" entitled class members to pre-paid future towing services.

26.     By misleading its customers into paying the "Administrative Service Fee," Defendant has failed to disclose to members of the First Proposed Class that the fee was based on a predetermined rate or charge, instead of the value of the services actually performed, which were worthless in actuality.

## II. FACTS

## B. SECOND PROPOSED CLASS - "SCOOPED" REBATES

27.     As previously alleged, the Coupes purchased from Defendant a 2003 Ford Excursion on May 7, 2003.

28.     When the Coupes purchased the 2003 Ford Excursion, Ford Motor Company ("FMC") was offering customers a cash rebate.

29.     The Coupes qualified for a $2,000.00 cash rebate on their purchase of the 2003 Ford Excursion

30.     Defendant and its agents knew of this cash rebate being offered by FMC but failed to disclose the existence of the rebate to the Coupes.

31.     Instead, Defendant reported to FMC that it had given the Coupes the $2,000.00 cash rebate against the purchase price of the 2003 Ford Excursion, then subsequently received $2,000.00 cash from FMC in fraudulent reimbursement and kept the money for itself.

32.     Moreover, Defendant forged Plaintiff Robert Coupe's signature on its "customer cash payment authorization" form in order to convince FMC that Defendant had awarded the rebate to the Coupes.

33.     As previously alleged, the Coupes purchased from Defendant a 2002 Ford Explorer on June 26, 2001.

34.     The Coupes qualified for a $1,000.00 cash rebate on the purchase of the 2002 Ford Explorer, but Defendant and its agents knew of the cash rebate being offered by FMC but failed to disclose the existence of the rebate to the Coupes.

- 7 -

35.     Instead, Defendant reported to FMC that it had given the Coupes the $1,000.00 cash rebate against the purchase price of the 2002 Ford Explorer, received $1,000.00 cash from FMC in fraudulent reimbursement and then kept the rebate for itself.

36.     As previously alleged, the Coupes purchased from Defendant a 2002 Ford F-150 on December 29, 2001.

37.     The Coupes qualified for a total of $1,494.73 in cash rebates on the purchase of the 2002 Ford F-150, but Defendant and its agents knew of the cash rebate being offered by FMC but failed to disclose the existence of the rebate to the Coupes.

38.     Instead, Defendant reported to FMC that it had given the Coupes the $1,494.73 in cash rebates against the purchase price of the 2002 Ford F-150, received $1,494.73 cash from FMC in fraudulent reimbursement and then kept $894.73 for itself, while awarding only the remaining $600.00 to the Coupes.

39.     As previously alleged, the Wards purchased from Defendant a 2004 Ford Expedition on July 21, 2004.

40.     The Wards qualified for a total of $5,000.00 in cash rebates on the purchase of the Expedition, which was acknowledged by both the Wards and Defendant.

41.     Defendant reported to FMC that it had given the Wards all $5,000.00 in available cash rebates against the purchase price of the 2004 Expedition.  However, Defendant really gave only $4,000.00 to the Wards, and kept the remaining $1,000.00 for itself under false pretenses and deception.

42.     Defendant calls this practice "scooping" the rebate, and the name "scooping" has been

- 8 -

used to describe this practice throughout the automotive industry for a long period of time. "Scooping," sometimes called "swallowing," refers generally to the practice of an automobile dealership's failure to disclose an available consumer rebate, failure to include the rebate in the retail or lease agreement as a reduction to the purchase price or the amount financed, and subsequent absorption of the rebate from the manufacturer as pure dealership profit.

43.     Upon information and belief, Defendant through sales training, sales policies and other procedures, instructed its employees and agents to "scoop" rebates based upon certain criteria applicable to Defendant's customers.

44.     On some occasions, when customers did not inquire as to the availability of a cash rebate, Defendant intentionally refrained from informing the customers of the existence of the cash rebate.

45.     On other occasions, customers asked for a cash rebate and Defendant told the customers that no cash rebates were available on the particular automobile in question, despite the actual availability of such a rebate.

46.     On other occasions, customers asked for a cash rebate and Defendant intentionally misrepresented the amount of the available rebate, giving a portion of the rebate to the customers and keeping the rest for Defendant.

47.     Upon information and belief, Defendant "scooped" numerous rebates each month. These customers, victims of rebate "scooping," constitute the Second Proposed Class.

48.     Upon information and belief, Defendant first targeted customers with poor English-speaking skills. However, no customers were immune, as demonstrated by the scooping of Plaintiffs'

- 9 -

rebate alleged hereinabove.

49.     Upon information and belief, Defendant fraudulently induced class members to sign a blank form, labeled the "Customer Cash Payment Authorization," under false pretenses.  The "Customer Cash Payment Authorization" form contained language authorizing FMC to pay all available "Customer Cash Incentives" to Defendant instead of the signing class member, although Defendant would either conceal the operative language or misrepresent the purpose of that language to Plaintiff.  After obtaining the class member's signature, but out of that class member's presence, Defendant and its agents would fill in the remaining blanks, including the dollar amount of the rebate that Defendant was going to fraudulently receive from FMC.

50.     On many occasions when Defendant could not obtain a customer's signature through misrepresentation or false pretenses, Defendant would simply forge the customer's signature and submit the forgery directly to FMC to scoop the customer's rebate.  For example, see paragraphs 28-32 above.

51.     Upon information and belief, Defendant often paid for advertising spots on television, radio and printed media that include factory incentive cash rebate offers on various automobiles offered for sale, without the intent to sell the automobiles with cash rebates as advertised.

52.     Defendant repeatedly made false or misleading statements of fact concerning the existence of price reductions available for its customers.

53.     Defendant repeatedly failed to disclose the existence of available cash rebates to its customers, despite the obvious materiality of the rebate to the contractual relationship between the parties.

- 10 -

7045 COLLEGE BOULEVARD • OVERLAND PARK, KANSAS 66211

( A STOCK INSURANCE COMPANY )

0047270 0

ITEM 3

| COVERAGES, PROPERTY INSURED, AND SPECIAL PROVISIONS APPLICABLE TO EACH COVERAGE PART: | INSUREDS | LOCA-TIONS | PERILS INSURED | OUR LIMITS |
|---|---|---|---|---|
| CRIME (PART 380) | | | | |
| EMPLOYEE DISHONESTY | 01 | ALL | CRIME | 200,000 |
|    DEDUCTIBLE    $1,000 | | | | |
|    0320 EMPLOYEE DISHONESTY EXTENSIONS | | | | |
|    0511 WELFARE & PENSION BENEFIT PLAN | | | | |
| LEWIS FORD, INC. | | | | |
| 401(K) PLAN | | | | |
| LOSS FROM WITHIN A BUILDING | 01 | 01 | CRIME | 20,000 |
|    0322 COMPUTER FRAUD AND FUND         TRANSFER | | | | |
| CLASS B SAFE | | | | |
| LOSS FROM WITHIN A BUILDING | 01 | 04 | CRIME | 20,000 |
|    0322 COMPUTER FRAUD AND FUND         TRANSFER | | | | |
| INGROUND COMB-SAFE | | | | |
| LOSS OUTSIDE THE BUILDING | 01 | ALL | CRIME | 20,000 |
| MONEY ORDERS AND    COUNTERFEIT PAPER CURRENCY | 01 | ALL | CRIME | 20,000 |
| DEPOSITOR'S FORGERY    DEDUCTIBLE    $1,000 | 01 | ALL | CRIME | 50,000 |
| GARAGE OPERATIONS AND AUTO HAZARD (PART 500) | 01 | ALL | SEE BELOW | 500,000 EA. OCCUR |

|  | DEDUCTIBLE |
|---|---|
| WORK/PRODUCTS | 1000 |
| PREMISES | 250 |
| INJURY GROUP 5 | 1000 |
| INJURY GROUP 6 | 10% |
| CUSTOMER COMPLAINT DEFEN | 2000 |
| STATUTE & TITLE E&O | 2000 |
| EMPLOYEE RELATED DEFENSE | 250 |

ENDORSEMENTS APPLICABLE:
   0088 ADDITIONAL INSURED-FURNISHED
        AUTO HOUSEHOLD MEMBERS
   0162 DISCRIMINATION INCLUDING WRONGFUL
        EMPLOYMENT PRACTICES
   0295 NECESSARY AND INCIDENTAL CLAUSE

# UNIVERSAL UNDERWRITERS INSURANCE COMPANY

7045 COLLEGE BOULEVARD • OVERLAND PARK, KANSAS 66211

( A STOCK INSURANCE COMPANY )

0047270 0

ITEM 3

| COVERAGES, PROPERTY INSURED, AND SPECIAL PROVISIONS APPLICABLE TO EACH COVERAGE PART: | INSUREDS | LOCA-TIONS | PERILS INSURED | OUR LIMITS |
|---|---|---|---|---|
| AMENDED | | | | |
| 0334 75% REDUCTION OF DEDUCTIBLE | | | | |
| 0339 STATUTE AND TITLE E & O | | | | |
| PRIOR ACTS EXCLUDED | | | | |
| 0353 ASBESTOS EXCLUSION | | | | |
| 0410 STATUTORY RIGHT OF PRIVACY | | | | |
| EXCLUSION | | | | |
| 0467 VIOLATION OF COMMUNICATION OR | | | | |
| INFORMATION LAW | | | | |
| INJURY GROUP 1   (BODILY INJ/PROP DMG) | 01 | ALL | COVERED | INCLUDED |
| INJURY GROUP 2   (MENTAL INJURY) | 01 | ALL | COVERED | INCLUDED |
| INJURY GROUP 3   (PERSONAL INJURY) | 01 | ALL | COVERED | INCLUDED |
| INJURY GROUP 4   (ADVERTISING INJURY) | 01 | ALL | COVERED | INCLUDED |
| INJURY GROUP 5   (EMPLOYEE BENEFITS) | 01 | ALL | COVERED | INCLUDED |
| INJURY GROUP 6   (DISCRIMINATION) | 01 | ALL | COVERED | INCLUDED |
| ADDITIONAL INSUREDS | | | | |
| 0031 ADDITIONAL INSURED-FURNISHED AUTO | DD | ALL | COVERED | INCLUDED |
| 0033 ADDITIONAL INSURED-PROPERTY | BB | 01, 02, 03, 04 | COVERED | INCLUDED |
| DRIVE OTHER AUTOS | AA, CC, DD | ALL | COVERED | INCLUDED |
| 0034 DRIVE OTHER AUTOS | | | | |
| MEDICAL PAYMENTS | 01, AA, CC, DD | ALL | COVERED | 1,000 |
| 0035 MEDICAL PAYMENTS | | | | |
| CUSTOMER COMPLAINT DEFENSE | 01 | ALL | COVERED | 25,000 500,000 |
| STATUTE AND TITLE E & O | 01 | ALL | COVERED | 500,000 |

256309

PAGE 1-I

Case 2:08-cv-02561-SHM-dkv   Document 1-1   Filed 08/26/08   Page 54 of 60   PageID 58

0047270 0

ITEM 3
COVERAGES, PROPERTY INSURED, AND
SPECIAL PROVISIONS APPLICABLE TO
EACH COVERAGE PART:

|  | INSUREDS | LOCA-TIONS | PERILS INSURED | OUR LIMITS |
|---|---|---|---|---|

GENERAL LIABILITY (PART 950)

|  | | | GROUP 5 | NO COVER |
|---|---|---|---|---|
|  | | | GROUP 6 | NO COVER |

    16292B - BASIS 021
    CONSTRUCTION OPERATIONS - OWNER
    - N.O.C. (NOT RAILROADS) NOT
    ON BOARD SHIPS.

AUTO INSURANCE (PART 900)

| | INSUREDS | LOCA-TIONS | PERILS INSURED | OUR LIMITS |
|---|---|---|---|---|
| OWNED AUTOS | 01 | ALL | COMPRE. | 1,000 DED |
| | | | COLLISION | 1,000 DED |

  0353 ASBESTOS EXCLUSION
  0387 EXCLUSION - DIMINISHED VALUE
  0418 VIDEO EQUIPMENT IN AUTOS
NO. ---DESCRIPTION---

 01 2000 JAGUAR XJ8
  ID #SAJDA14C4YLF04381
   "UM COVERAGE UNDER UNINSURED
    MOTORISTS INDIVIDUALS
     DESIGNATED BELOW"

-------------------------------------------------------

NEWLY ACQUIRED AUTOS ARE COVERED FOR THE HIGHEST LIMIT AND THE LOWEST
DEDUCTIBLE FOR THE PERILS APPLICABLE TO YOU IN THE SCHEDULE OF OWNED AUTOS.

* LIMIT IS ACTUAL CASH VALUE OF THE AUTO, LESS DEDUCTIBLE SHOWN PER AUTO.

UMBRELLA (PART 980)

| | INSUREDS | LOCA-TIONS | PERILS INSURED | OUR LIMITS |
|---|---|---|---|---|
| UMBRELLA | 01 | ALL | INJURY | 6,000,000 |
|   RETENTION: NONE | | | | EA. OCCUR |

  ENDORSEMENTS APPLICABLE:
  0162 DISCRIMINATION INCLUDING WRONGFUL
      EMPLOYMENT PRACTICES
  0337 STATUTE AND TITLE E & O -
      DEFENSE ONLY
  0353 ASBESTOS EXCLUSION
  0410 STATUTORY RIGHT OF PRIVACY
      EXCLUSION
  0467 VIOLATION OF COMMUNICATION OR
      INFORMATION LAW



## IN THE CHANCERY COURT OF TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

LEWIS FORD, INC.,

       Plaintiff,

v.                                                           No. CH-08-1337-2

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,

       Defendant.

---

## DEFENDANT'S FIRST SET OF REQUESTS FOR
## PRODUCTION OF DOCUMENTS PROPOUNDED TO PLAINTIFF

---

**COMES NOW**, the Defendant, Universal Underwriters Insurance Company (hereinafter referred to as "Universal"), by and through its counsel of record, pursuant to Tennessee Rules of Civil Procedure Rule 34, and propounds the following Requests for Production of Documents to the Plaintiff, Lewis Ford, Inc. (hereinafter referred to as "Plaintiff"). Plaintiff is to respond to these Requests for Production of Documents within thirty (30) days of the date reflected on the certificate of service.

These requests are directed to Plaintiff, but include inquiry as to information which may be within the knowledge of Plaintiff, plaintiff's attorney or anyone else acting on Plaintiff's behalf. Furthermore, the inquiries made are continuing, so that the answers and responses should be supplemented in the event new information is obtained by Plaintiff, plaintiff's attorney or any other person acting on Plaintiff's behalf, subsequent to the time that such answers and/or responses are served on Defendant.

## DEFINITIONS

A.     The word "person" as used herein, means any natural person, firm, corporation, partnership, joint venture, or any other form of business entity.

B.     As used herein, the words "document" and "documents" mean any proper other writing and each item or graphic or oral material, however recorded or reproduced, including drafts or other preliminary material, in the possession, custody or control of the Plaintiff, or of which the Plaintiff has knowledge, wherever located, whether an original or a copy, including, but not limited to the medical records, agreements, communications, correspondence, summaries, diaries, journals, notebooks, financial statements, invoices, memoranda, notes records, electronic data processing cards and tapes or other records, telegrams, letters photographs, video or audio tapes, drawings, data, reports, printed matter and publications, and any copy containing thereon or having attached thereto any authorizations, notes, comments, or other material shall be deemed to be a separate document from the original and any other copy not containing such material within the foregoing definition.

C.     As used herein, the words "books" and "records" shall include all documents, papers, lettergrams, cablegrams, memoranda, communications, notes, schedules, tabulations, reports, abstracts, agreements, contracts, diaries, calendars, Photostats, notebooks, ledgers, journals, computer printouts, invoices, portfolios, pamphlets, brochures, leaflets, transcripts, records of any conversations or oral presentations of any kind and any other writings, data or tangible objects, whether originals or copies.

D.     As used herein, "you" and "your" means the Plaintiff, to whom these requests are directed.

E.    As used herein, the word "Policy" refers to policies of insurance between Plaintiff and Universal Underwriters Insurance Company, and includes, but is not limited to, policy numbers 9132728 and 9256309.

## INSTRUCTIONS

If the Plaintiff has in its possession or under their control any privileged documents which would otherwise be producible hereunder, they are requested for each document to state:

(i)    The type of document, its date and its subject or general subject matter;

(ii)    The name, address and position of the person or person who prepared the documents;

(iii)    The full name and position of each person to whom the document was distributed and/or who has seen the document.

(iv)    The full name and last known address of each person who currently has custody, control or possession of the document; and

(v)    The reason for withholding the document.

## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1**:    Please produce pre-litigation documents between plaintiffs Robert Coupe, Edward Ward, and Sharleen Ward and Plaintiff, and any other claimants, alleging any improprieties by Plaintiff regarding the matters complained about in *Robert Coupe, et al. v. Lewis Ford, Inc.*, cause number CH-05-0063.

**Request No. 2**:    Please produce documents between Universal and Lewis Ford regarding or related to *Robert Coupe, et al. v. Lewis Ford, Inc.*, cause number CH-05-0063.

**Request No. 3**:      Please produce documents from Universal relative to policy number 9132728 issued by Universal to Plaintiff, including the policy, proposals, renewals, binders, and declination letters.

**Request No. 4**:      Please produce documents from Universal relative to policy number 9256309 issued by Universal to Plaintiff, including the policy, proposals, renewals, binders, and declination letters.

**Request No. 5**:      Please produce the insurance policies and related documents issued by Universal to Plaintiff in effect for policy years 1992, 1993, 1994, 2004, 2005, and 2006.


Respectfully submitted,

**GLANKLER BROWN, PLLC**

By:    _____

John I. Houseal, Jr. (# 8449)
Andre B. Mathis (#026458)
1700 One Commerce Square
Memphis, Tennessee 38103
(901) 525-1322
Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was mailed via U.S. Mail, postage prepaid, this the _____ day of August, 2008 to:

Edward Bearman
The Law Office of Edward M. Bearman
780 Ridge Lake Blvd., Suite 202
Memphis, Tennessee 38120

_____

## IN THE CHANCERY COURT OF TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

**LEWIS FORD, INC.,**

      **Plaintiff,**

**v.**                                    **No.:   CH-08-1337-2**

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY,**

      **Defendant.**

---

### NOTICE OF APPEARANCE OF COUNSEL

---

      **COMES NOW,** Glankler Brown, PLLC, Attorneys at Law, 1700 One Commerce Square, Memphis, Tennessee, 38103, and files this Notice of Appearance as counsel of record in the above-styled and numbered cause for the Defendant, Universal Underwriters Insurance Company.

      **DATED** this 8th day of August, 2008.

                             Respectfully submitted,

                             **GLANKLER BROWN, PLLC**
                             1700 One Commerce Square
                             Memphis, Tennessee  38103
                             (901) 525-1322

           By:                             
                John T. Houseal, Jr.,        #8449

### CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Notice of Appearance was mailed, postage prepaid, this the 8th day of August, 2008, to Mr. Edward Bearman, The Law Office of Edward M. Bearman, 780 Ridge Lake Blvd., Suite 202, Memphis, Tennessee  38120.

ND: 4835-4537-4466, v. 1